UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-CV-21194-COOKE/DAMIAN

FELIX A. RAPOSO,

     Plaintiff,

vs.

ARC ONE PROTECTIVE SERVICES LLC,
CHANCE F. RAMOS, AND
AUSTIN WALLACE,

     Defendants.

_____/

## PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION

Plaintiff, Felix Raposo, on behalf of himself and others similarly situated, requests this Court to conditionally certify this case as a collective action against Defendants, ARC One Protective Services, LLC, Chance F. Ramos, and Austin Wallace, and to permit him to send supervised notice to all others similarly situated of their opt-in rights pursuant to 29 U.S.C. §216(b).

## I.  NATURE OF RELIEF SOUGHT

A.      An Order granting conditional certification of a Collective Action under §216(b) of the Fair Labor Standards Act for the proposed Putative Class defined as follows:

> All persons who are currently, or who were, working for ARC One Protective Services LLC, Chance Ramos, and Austin Wallace from April 19, 2019, to the present as security officers or other similarly titled positions, either directly by or through any of their subsidiaries or affiliated companies.

B.      An Order appointing Mr. Raposo as the representative of the Putative Class with authority to appear at any mediation/settlement conference and to bind the Putative Class.

C.      An Order requiring that within 10 days, Defendants to format and produce a in hard copy and electronically an Excel spreadsheet a complete list of each person in alphabetical order by last name – including his/her last known home address, cellular telephone number, and email address in a separate field – who worked as a security officer or other similarly titled position for Defendants at any time between April 18, 2019 and the present to facilitate the preparation and sending of notice;

D.      An Order permitting Mr. Raposo's counsel to send a Court-Approved Notice by email and by U.S. Mail to all members of the Putative Class about their rights to opt into this collective action by filing a Consent to Join Lawsuit and to call/text each to ensure that they received the Notice forms;

E.      An Order permitting Mr. Raposo's counsel to send a Court-Approved Reminder Notice by email and by U.S. Mail to all Putative Class members and to call/text each to ensure that they received the Reminder Notice; and

F.      An Order requiring Defendants to post notice in their break room for the entire notice period and to provide a copy of the Court-Approved Notice to all Putative Class members in the next paycheck / pay stub provided to Defendants' current employees.

## II.  INTRODUCTION

Plaintiff, Felix Raposo, brought this collective action for himself and other similarly situated current and former security officer employees of Defendants, ARC One Protective Services, LLC, Chance F. Ramos, and Austin Wallace, for failing to properly pay overtime wages for all hours worked after forty (40) a week. [ECF Nos. 1.] Mr. Raposo requests the Court to conditionally certify a collective action and to authorize him to send notice of this lawsuit and a Consent to Join form to a Putative Class – those similarly situated security officers employed by Defendants from April 19, 2019, through the present –pursuant to 29 U.S.C. §216(b) of Fair Labor Standards Act ("FLSA").

Mr. Raposo satisfies the minimal threshold for conditionally certifying this FLSA collective action for notice and discovery. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001). The allegations in the Complaint, coupled with the Declarations filed of record, demonstrate that Defendants subjected Mr. Raposo and the Putative Class to a uniformly applicable compensation policy that deprived them of the overtime wages they earned in violation of the FLSA. The Declarations, coupled with the Consent to Join forms filed herein, confirm that others "similarly-situated" desire to join this case, will benefit from the Court's supervision, and will benefit from the sending of Notice to each member of the Putative Class pursuant to 29 U.S.C. §216(b). (Composite Exhibit "1"); *also see* [ECF Nos. 5, 6, 13, and 29.] The Putative Class is readily identifiable, sufficiently numerous, and their claims are readily calculable, further supporting the assemblage of a Collective Action.

## III.  PROCEDURAL HISTORY

Mr. Raposo filed this lawsuit on April 18, 2022 [ECF No. 1]. Mr. Padilla joined this case as an Opt-In Plaintiff on April 26, 2022. [ECF No. 6.] Mr. Castro joined this lawsuit later that day [ECF No. 13]. Mr. Gallo Padron joined this lawsuit on May 23, 2022. [ECF No. 29.] Defendants filed their Answer and Affirmative Defenses, admitting that they engaged in interstate commerce and had gross annual revenues exceeding $500,000. [ECF No. 30 at ¶¶14, 16.] Defendants also asserted seven (7) affirmative defenses that they pled as applicable to Mr. Raposo and their other employees. *Id.*  Mr. Raposo now seeks to assemble a collective action.

## IV.  RELEVANT FACTS

**Plaintiff.** Defendants employed Mr. Raposo as a security officer from March 28, 2021 through April 19, 2022. (Declaration of Raposo as Exhibit "1$_A$"); *also see* [ECF No. 1]. Mr. Raposo claims that Defendants did not pay him overtime for the time he spent working as a security officer at the COVID-19 testing and treatment sites to which they assigned him to work. Defendants did not pay him overtime because they (mis)classified and paid him as an independent contractor instead of as an employee. (Exhibit "1$_A$".)

**Opt-In Plaintiffs.** Three (3) Opt-In Plaintiffs who also worked for Defendants as security officers during past several filed Consents to Joint: Mr. Padilla and Mr. Castro. [*See* ECF Nos. 6, 13, and 29.]  Two of the Opt-In Plaintiffs, Mr. Padilla and Mr. Castro, attest to having worked more than 40 hours a week but not receiving overtime pay because they also were misclassified as independent contractors instead of being properly classified and paid as Defendants' employees. (Exhibits "1$_B$" and "1$_C$".)

**Defendants.** Defendant, ARC One Protective Services, LLC, is a Florida corporation that discloses its principal place of business in Orlando, Florida, but with offices in both Coral Gables, Florida and in Austin, Texas. (Exhibits "2" and "3".) Defendant, Chance Ramos, identifies himself as the President and CEO, while Austin Wallace holds himself out as the Director of Operations. (Exhibit "3".)

**Defendants' Pay Practices.** Mr. Raposo alleges that he and Defendants' other security officers did not receive overtime pay from Defendants when they worked for more than 40 hours in a workweek. (ECF No. 1.) Bolstering this claim, each of the Declarants attests that Defendants required them to sign an agreement that each was an independent contractor, that each was paid as an independent contractor, and that each worked more than 40 hours in one or more workweeks for Defendants, but that Defendants would only pay them at a regular rate (and not time and one-half) for the time that they spent working. (Composite Exhibit "1".) Defendants paid Mr. Raposo, Mr. Padilla, Mr. Castro and the Putative Class for each of the hours worked at the regular hourly rate of pay, and Defendants' pay records confirm that each worked overtime but was not paid overtime. (*See* Composite Exhibit "1".) Defendants' uniform pay practices are type properly addressed in a collective action setting.

## V.  THE LAW

Congress enacted the FLSA in 1938 to ensure that every employee receives "a fair day's pay for a fair day's work." *A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (quoting address to Congress by Franklyn D. Roosevelt in 1937). The FLSA requires each employer to pay all non-exempt employees overtime wages calculated at one and one-half times their regular rate of pay for all hours worked over 40 hours in a workweek. 29 U.S.C. §207(a). Aggrieved employees who were not properly paid overtime wages are entitled to sue each "employer" for all unpaid wages, plus liquidated damages, plus attorneys' fees and costs.

The FLSA authorizes an employee to bring an action on behalf of himself/herself and others similarly situated to recover overtime wages. 29 U.S.C. §216(b):

> An action to recover the liability [for unpaid overtime] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of them self or themselves and other similarly situated. *No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.* [Emphasis added].

Section 216(b) of the FLSA provides aggrieved employees like Mr. Raposo with the right to pursue an action against each employer to recover unpaid overtime wages on behalf of himself and others similarly situated. "Congress' purpose in authorizing § 216(b) class actions was to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer." *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1297 (11th Cir. 2003).

## VI.  ARGUMENT FOR CONDITIONAL CERTIFICATION

This case is properly certified as a collective action due to the common pay practices at issue, the demonstrated interest by three others similarly situated to Mr. Raposo, the common defenses applicable to all the similarly situated employees, and the policy reasons supporting conditional certification. While the burden is on Mr. Raposo, it is "*not heavy*", and may be met by making substantial class-wide allegations, "that is, detailed allegations supported by affidavits which successfully engage [d]efendant's affidavits to the contrary." *Id.* at 1096-97 (internal quotations omitted) (emphasis added); *Hipp*, 252 F.3d at 1218-19. This case involves whether Defendants failed to pay their security offices the overtime wages they earned, including by misclassifying them as independent contractors. After establishing that Mr. Raposo and the similarly situated security officers were "employees" for purposes of the

FLSA, thereby establishing liability, and that they worked more than 40 hours in one or more workweeks, remainder of the case will involve calculating damages on a class-wide basis utilizing Defendants' time and pay records. This case will be a prototypical collective action.

Allowing Mr. Raposo and the Putative Class to first proceed through notice and discovery is contemplated by the two-tiered approach. *See Leuthold v. Destination America,* 224 F.R.D. 462, 467 (N.D. Cal. 2004) ("The two-tier approach contemplates progression through the notice stage before reaching the more rigorous inquiry required to maintain the class. This is evident from the methods usually employed to decide the issues raised by the two tiers."). The "similarly situated" requirement of §216(b) is more elastic and less stringent than the requirements of Rule 23 (class actions), Rule 30 (joinder), and Rule 42 (severance). *See Hipp*, 252 F.3d at 1219; *see also Pendlebury, supra*; *see also White v. Osmose*, 204 F. Supp. 2d 1309, 1315 (M.D. Ala. 2002).

A.    <u>The Policy Reasons Supporting Preliminary Certification.</u>

The FLSA establishes that an action for unpaid overtime wages, "may be maintained... by any one or more employees for and on behalf of himself and themselves and other employees similarly situated." 29 U.S.C. §216(b); *see also Dybach*, 942 F.2d. at 1566. So-called "collective actions" provide workers an opportunity to, "lower individual costs to vindicate rights by pooling resources," and enable the "efficient resolution in one proceeding of common issues of law and fact..." *Hoffmann-La Roche v. Sperling*, 493 U.S. 169, 170 (1989). Collective actions allow Courts to avoid the burdens posed by deciding a series of nearly identical individual suits involving claims arising from the same pay practices by the same employers. The collective action mechanism also safeguards against inconsistent decisions and against defendants/employers from spreading misleading information to the putative class members by assuring that the notifications to and joinder of additional parties are accomplished properly and efficiently, promoting efficiency in the discovery process, and expediting resolution. *See e.g.*, *Id.* at 170-72; *see also Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418, 427 (M.D. Ala. 1991).

In furtherance of the FLSA's "broad remedial purpose", Courts have the authority to supervise notifying potential opt-in plaintiffs of their right to join an existing action early in

the proceeding. *Hoffmann-La Roche*, 493 U.S. at 169. The prompt issuance of notice after a case is filed is necessary because the FLSA's statute of limitations continues to run, and so is not tolled, for any individual class member until each affected individual files a written consent to join form with the Court. 29 C.F.R. § 790.21(b)(2); *Grayson*, 79 F.3d at 1105-06. The damages and liquidated damages available to putative class members who have not yet joined this action decrease for each day that passes, absent tolling. Thus, it is imperative that Mr. Raposo notify the Putative Class members of their rights as soon as possible so that they can learn of their rights and then return their consent to join forms to the undersigned to be filed herein.

     **B.**      **Mr. Raposo Satisfies The *Minimal* Burden For Certification.**

     Courts within the Eleventh Circuit use a two-tiered approach to certification of an opt-in collective action pursuant to 29 U.S.C. §216(b). *See Hipp,* 252 F .3d at 1219 (stating that the two-tiered approach "appears to be an effective tool for District Courts ion this circuit adopt it in future cases.") At Stage I, the preliminary stage, the Court's determination is "usually based only on the pleadings and any affidavits which have been submitted." *Hipp*, 252 F.3d at 1218. Because of the minimal evidence available at this stage and the lack of discovery, "this determination is made using a **fairly lenient standard**, and typically results in 'conditional certification' of a representative class." *Id.* [*emphasis added*]; *also see Hernandez v. Two Bros. Farm, LLC*, 2008 WL 4613069 (S.D. Fla. 2008). The first step in the collective action process is for the Court to conditionally certify the collective action and to authorize Mr. Raposo, through his counsel, to send notice of the pendency of this lawsuit and the right to opt-in (based upon a lenient standard) to others similarly situated to Mr. Raposo so that they are informed of their rights to opt into the action and, for current employees, of the right to be free from retaliation. *See Hipp,* 252 F.3d at 1219; *see also Grayson v. K-Mart Corp.,* 79 F.3d at 1097. The second stage of the two-tiered procedure generally occurs at the end of discovery or upon a defendant's motion for decertification, when the Court has ample information and makes a factual determination on the "similarly situated" question. *Id.* Mr. Raposo will focus on the Stage I considerations at this time.

     To assemble a collective action under the FLSA, "an employee need only show that

he is suing his employer for himself and on behalf of other employees 'similarly situated.'" *Grayson v. Kmart*, 79 F.3d 1086, 1096 (11th Cir. 1996); and *Aguirre v. Aventura's Finest Hand Car Wash At Gulfstream Park, Inc.*, 2014 WL 3721360 (S.D. Fla. 2014). Mr. Raposo satisfies the Stage I considerations by showing that other members of the Putative Class held positions that are similar, but need not be identical, to the position he held (security officer). *Id.* As the Court recognized in *Bennett v. Hayes Robertson Group, Inc.*, 880 F. Supp. 2d 1270, 1282-83 (S.D. Fla. 2012):

> At this stage, a court may grant conditional certification if a plaintiff demonstrates a reasonable basis to believe that: (1) there are other employees of the Defendant who desire to opt-in and (2) that these other employees are " 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Dybach v. State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991).

Mr. Raposo satisfies each of the foregoing elements, making the assemblage of a collective action proper.

### 1.    *Sufficient interest by several of Mr. Raposo's former co-workers exists.*

With respect to the first factor, *i.e.*, whether other similarly situated employees desire to opt into the lawsuit, Mr. Raposo offers the Consents to Join and Declarations from three (3) of his former co-workers, other security officers, who had similar job positions, who were not paid overtime, and who worked in South Florida. Since interest by one other former employee is sufficient, demonstrated interest by three others satisfies the standard. *Compare Santiago v. Mid-S. Painting, Inc.*, 2011 WL 3418252 (S.D. Fla. 2011); *Dieujuste v. R.J. Elec., Inc.*, 2007 WL 2409831 (S.D. Fla. 2007) (one opt-in); *Wynder v. Applied Card Systems, Inc.*, 2009 WL 3255585 (S.D. Fla. 2009) (granting conditional certification of an FLSA collective action based upon two affidavits – one from the named plaintiff and one from an opt-in plaintiff). Judge Rosenbaum recognized as follows:

> With respect to the first factor, Plaintiffs' burden to show the existence of other potential opt-ins is not onerous. "[T]he existence of just one other co-worker who desires to join in is sufficient to 'rais[e] the Plaintiff's contention beyond one of pure speculation.' " *Bennett*, 880 F.Supp.2d at 1283 (quoting *Guerra v. Big Johnson Concrete Pumping, Inc.*, 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006)). Courts in this District have conditionally certified classes with as few as two affidavits from potential plaintiffs. *See Wynder v. Applied Card Sys., Inc.*, 2009 WL 3255585, at *3 (S.D. Fla.

> Oct.7, 2009) (two affidavits indicating that nine other employees would opt in if given the opportunity sufficient to conditionally certify class); *see also Reyes*, 801 F.Supp.2d at 1356 (affidavits from five named plaintiffs and consent forms from seven employees sufficient to conditionally certify class); *Pendlebury v. Starbucks Coffee Co.*, 10 Wage & Hour Cas.2d 401, at *3 (S.D. Fla. 2005) (affidavits from two named plaintiffs and four other individuals sufficient to certify class of store managers at seven different locations across four states); *Bell v. Mynt Entm't, LLC*, 223 F.R.D. 680, 683 (S.D. Fla. 2004) (affidavits of seven plaintiffs that indicated that others desired to opt in sufficient for conditional certification).

*Rojas v. Garda CL Se., Inc.*, 2013 WL 6834657 (S.D. Fla. 2013).

### 2.   *The other three security officers are similarly situated to Mr. Raposo.*

The next inquiry is whether Mr. Raposo and the Opt-In Plaintiffs are similarly situated, **not whether they are identical**. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 551 F.3d 1233, 1260 (11th Cir. 2008).

> To maintain an opt-in collective action under § 216(b), plaintiffs must demonstrate that they are "similarly situated." *Id.* At the certification stage, this requirement is "not particularly stringent": opt-in plaintiffs "need show only that their positions are similar, not identical, to the positions held by the putative class members." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1214, 1217 (11th Cir. 2001) (per curiam) (quotation omitted).

*Calderone v. Scott*, 838 F.3d 1101, 1104 (11th Cir. 2016). To send out notice, "[p]laintiffs need show only that their positions are similar, *but **not identical**,* to the positions held by the putative class members." *Grayson,* 79 F.3d at 1096 (internal quotations and citations omitted) (emphasis added); *see also Laos v. Grand Prize Motors, Inc.,* 2012 WL 718713, at *2 (S.D. Fla. March 6, 2012) (noting that the standard is a "flexible one"). Because the Court has minimal evidence at this preliminary stage of the proceedings, its determination is made using a "fairly lenient" standard, and typically results in conditional certification of a collective action. *See Cameron-Grant*, 347 F.3d 1240; *see also Pendelbury v. Starbucks Coffee Co.,* 2005 WL 84500, *3 (S.D. Fla. Jan. 3, 2005).

Mr. Raposo satisfies the five (5) factors traditionally considered in concluding that the members of the collective are similarly situated:

> Thus, a district court should consider a variety of factors in making the similarly situated determination including: "1) whether the plaintiffs all held the same job title;

2) whether they worked in the same geographic location; 3) whether the alleged violations occurred during the same time period; 4) whether the plaintiffs were subjected to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision maker; 5) the extent to which the actions which constitute the violations claimed by Plaintiffs are similar." *Gutescu v. Carey Int'l, Inc.,* Case No. 01–4026–CIV–MARTINEZ/SIMONTON, DE # 251 (6/16/03) (citing *Stone v. First Union Corp.,* 203 F.R.D. 532 (S.D. Fla. 2001)).

*Smith v. Tradesmen Intern., Inc.*, 289 F. Supp. 2d 1369, 1372 (S.D. Fla. 2003); accord *Coderre v. Wilson Waddell Co., LLC*, 2015 WL 12531979, at *3 (S.D. Fla. Jan. 15, 2015).

Mr. Raposo and the Declarants attest to (1) working as security officers for Defendants, (2) providing security services for Defendants at locations in South Florida, (3) working for Defendants during the past three years, (4) being misclassified by the Defendants as independent contractors instead of being paid as employees, and (5) suffering the same FLSA violations of not receiving overtime pay for the hours they worked beyond 40 in a workweek. (Composite Exhibit "1".) Furthermore, the payroll records for Mr. Raposo, the Opt-In Plaintiffs, and Defendants security officers employed by Defendants will reflect *Defendants' common practice of not paying overtime wages* for the times worked beyond 40 hours, as alleged in the Complaint, with the paystubs confirming that Defendants paid their security officers at their regular rate(s) of pay for working well beyond 40 hours in multiple workweeks. (Composite Exhibit "1".) This evidence is sufficient. *Freese v. Treecycle Land Clearing Inc.*, 2018 WL 11404616, at *2 (S.D. Fla. Feb. 6, 2018).

Questions of law or fact common to Mr. Raposo, the Opt-In Plaintiffs, and Defendants' other employed security officers predominate in this case. Mr. Raposo's claims are typical of the claims of the other security officers employed by Defendants since April 18, 2019. Mr. Raposo and the Putative Class also have significant, common issues that predominate over any individualized inquiries, including:

1)      Whether Defendants are subject to the provisions of the FLSA;

2)      Whether Defendants misclassified Mr. Raposo, the Opt-In Plaintiffs, and the Putative Class as independent contractors instead of properly classifying and paying them as employees;

3)      Whether Defendants improperly failed to pay overtime wages to Mr. Raposo,

the Opt-In Plaintiffs, and the Putative Class for the hours they worked beyond 40 in each workweek at issue;

4)      Whether Defendants had a good faith and reasonable belief for not paying the overtime due to Mr. Raposo and the Putative Class; and

5)      Whether Mr. Raposo and the Putative Class are entitled to recover liquidated damages for their unpaid/underpaid overtime wages.

Although subtle differences between the claims to be made by each employed security officer may exist, these minute differences do not present an impediment to the Court conditionally certifying the Putative Class.[1] *Pena v. Handy Wash, Inc.*, 28 F. Supp. 3d 1289 (S.D. Fla. 2014) (Conditionally certifying class of drivers with subtle differences who claimed to have been denied overtime wages).

**C.      Common Legal Issues Predominate.**

Mr. Raposo seeks conditional certification to pursue a legitimate unpaid overtime wage claim for himself and the Putative Class. For most of the time at issue, Defendants misclassified Mr. Raposo and their other security officers as independent contractors. The Eleventh Circuit Court of Appeals considered the issue of misclassification of employees and discussed as follows in this regard:

Courts have applied various multifactor tests to guide the "economic reality" inquiry. Both parties in the instant appeal rely on the following six factors, which many courts have used as guides in applying the economic reality test:

(1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;

(2) the alleged employee's opportunity for profit or loss depending upon

---

[1]      As the Court recognized in *Vondriska v. Premier Mortg. Funding, Inc.*, 564 F. Supp. 2d 1330, 1335 (M.D. Fla. 2007), "[V]ariations in specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at [the notice] stage." Quoting *Scott v. Heartland Home Finance, Inc.*, 2006 WL 1209813, *3 (N.D. Ga. May 3, 2006) (granting conditional certification to loan officers despite allegations their duties differed among branches); citing *Pendlebury v. Starbucks Coffee Co.*, 2005 WL 84500 (S.D. Fla. Jan. 3, 2005) (granting conditional certification to store managers classified as exempt despite some difference in job duties).

his managerial skill;

(3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;

(4) whether the service rendered requires a special skill;

(5) the degree of permanency and duration of the working relationship;

(6) the extent to which the service rendered is an integral part of the alleged employer's business.

While these factors serve as guides, the overarching focus of the inquiry is economic dependence:

No one of these considerations can become the final determinant, nor can the collective answers to all of the inquiries produce a resolution which submerges consideration of the dominant factor—economic dependence. The ... tests are aids—tools to be used to gauge the degree of dependence of alleged employees on the business with which they are connected. It is dependence that indicates employee status. Each test must be applied with that ultimate notion in mind. More importantly, the final and determinative question must be whether the total of the testing establishes the personnel are so dependent upon the business with which they are connected that they come within the protection of FLSA or are sufficiently independent to lie outside its ambit.

*Usery*, 527 F.2d at 1311–12 (emphasis in original) (citations omitted). Ultimately, in considering economic dependence, the court focuses on whether an individual is "in business for himself" or is "dependent upon finding employment in the business of others." *Mednick v. Albert Enters., Inc.*, 508 F.2d 297, 301–02 (5th Cir.1975)

*Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311-12 (11th Cir. 2013) [Fn. omitted.]

The significance of the "economic reality" test in determining whether to conditionally certify this matter as a collective action is that the test can be commonly and evenly applied to all of Defendants' security officers (with the same result = employees). *Id.*; *see* also *Lockwood v. CIS Services, LLC*, 2017 WL 6335955 (M.D. Fla. Sept. 26, 2017) (certifying collective action of independent contractors). As applied to this case, Defendants' security officers did not have much if any time to simultaneously work for anyone else, were provided with schedules

identifying and where to work, were instructed on what they needed to wear, were instructed on what gear they needed to have, and were instructed to follow other standardized rules, policies, and procedures. (Composite Exhibit "1".) Defendants' security officers, who include Mr. Raposo and the Opt-In Plaintiffs, were not able to use their ingenuity to be more productive (or earn more money in less time) while being paid hourly, could not work for others (considering that they worked over 40 hours each week for Defendants), only held security licenses, and were completely reliant on Defendants for their earnings as security officers. *See e.g.*, *Taylor v. C&L Towing & Transp., L.L.C.*, 2018 WL 3598763, at *5 (M.D. Fla. July 11, 2018), *report and recommendation adopted*, 2018 WL 3586324 (M.D. Fla. July 26, 2018)(certifying misclassification collective action).

Based on the allegations in the Complaint, coupled with the attached Declarations and the Consents to Join already of record, Mr. Raposo satisfied his burden to facilitate notice. Mr. Raposo demonstrated that Defendants employed well over 20 similarly situated security officers whom Defendants paid under the same compensation structure. (*See* Composite Exhibit "1".)

### D. Preliminary Certification Is Efficient.

Conditional certification would serve the broad remedial purpose behind the FLSA by providing notice to members of the Putative Class who may not otherwise be aware of their rights. *See Hoffman-LaRoche, Inc.*, 493 U.S. at 170-71 (noting that collective actions allow plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources," and preserve judicial economy "by efficient resolution in one proceeding of common issues of law and fact arising from the same discriminatory activity.") In *Hoffman-La Roche, Inc.*, the United States Supreme Court ruled that trial courts not only have authority to compel Defendant-employers to provide the names and addresses of potential Plaintiffs through the pre-trial discovery process, but that this authority also included the ability to require the sending of court-authorized consent forms to members of the Putative Class. *See id.* District Courts have discretion to take the appropriate action in FLSA cases such as this one to implement the purpose behind 29 U.S.C. §216(b) by facilitating notice to potential plaintiffs. *See id* at 486. This authority arises from the Court's broad discretionary power to

manage the process of joining multiple parties in an orderly manner. *Id*. Court-supervised notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cut-off dates to expedite disposition of the action. *Id*. at 487. Additionally, the benefits of the collective action provisions of 29 U.S.C. §216(b) "depend on employees receiving accurate and timely notice concerning the pendency of the collective action so they can make informed decisions about whether to participate." *Id*. at 486.

> Where discovery has not been completed, the typical result is that the motion is granted." *Cameron–Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 (11th Cir. 2003)(quoting *Hipp*, 252 F.3d at 1216). *See also Morgan*, 551 F.3d at 1262 (stating that "detailed pleadings and affidavits" may suffice to demonstrate reasonable basis that other employees are "similarly situated" and refusing to "hold that the [relatively substantial] amount of discovery that preceded the first-stage certification here is required").

*Bennett*, 880 F. Supp. 2d at 1283. *See also Morgan*, 551 F.3d at 1262 (stating that "detailed pleadings and affidavits" may suffice to demonstrate reasonable basis that other employees are "similarly situated" and refusing to "hold that the [relatively substantial] amount of discovery that preceded the first-stage certification here is required"). In this case, discovery has not completed, which further favors conditional certification.

E.   **A Three-Year Notice Period Is Proper.**

The FLSA permits recover for up to three-years of back wages, albeit not in every case. In line with the notion that the Court does not rule on the merits of the case at the conditional certification stage,[2] the Court also does not make any determination on whether to apply the two- or three-year limitations period at the Notice stage:

> The Court concludes that it is prudent to "err[ ] on the side of overinclusiveness and d[oes] not want to exclude potential claimants prematurely." *Pendlebury v. Starbucks Coffee Co.*, 2008 WL 700174, at *4 (S.D. Fla. Mar. 13, 2008). Accordingly, this Court will permit notice of the action to be sent to individuals who worked for Defendants

---

[2]   *Devries v. Morgan Stanley & Co. LLC*, 2014 WL 505157, at *7 (S.D. Fla. Feb. 7, 2014) ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations".)

extending back to three years prior to the filing of the Amended Complaint, at this time.

*Blake v. Batmasian*, 208 F. Supp. 3d 1292, 1295 (S.D. Fla. 2016). Consequently, those who receive notice of this action should include the security officers who worked for Defendants from April 18, 2019 to the present. *See e.g.*, *Leo v. Sarasota County Sch. Bd.*, 2017 WL 477721, at *3 (M.D. Fla. Feb. 6, 2017) (3-year notice period); and *Martinez v. DHL Express (USA) Inc.*, 2016 WL 455394, at *9 (S.D. Fla. Feb. 5, 2016) (three-year notice period). After all the interested current and former employees join this lawsuit, and after discovery, the Court can then determine whether the evidence is sufficient to make a ruling on the applicable limitations period, to consider any challenge to any Opt-In Plaintiff, or it can allow the jury to make the decision if the evidence is unclear on any such issue.

      **F.**    **Notice and Discovery Should Be Expedited.**

      Since the limitations period applicable to the security officers employed by Defendants (the Putative Class members) continues to run until they file their Consents to Join in this action or file their own lawsuit(s), Mr. Raposo requests that the Court enter an Order expediting the notice and discovery processes relating to their notification by requiring that Defendants provide within 10 days from any Order entered by the Court the names, last known addresses, cellular telephone numbers, and email addresses for each security officer who worked from Defendants from April 18, 2019 to the present. Mr. Raposo further requests that Defendants be required to format and produce, on this expedited basis, the list both in hard copy and electronically in an Excel spreadsheet, with each Putative Class member listed alphabetically from "A" to "Z". Mr. Raposo requests that this Excel spreadsheet be formatted with each person's last known home address, cellular telephone number, and email addresses in a separate field corresponding with each name to facilitate the preparation and mailing of notice. *See Vasquez v. Scotts Co. LLC*, 2017 WL 3154775, at *3 (S.D. Fla. July 25, 2017) ("within fourteen days of the date of this Order, the Defendants shall produce to the Plaintiffs a computer readable data file containing the names, addresses, telephone numbers, and e-mail addresses of all members of the conditional collective action.")

The reason for this short time for production of information by Defendants is that the data requested is of a time-sensitive nature. It is also information of a type which is readily available to the Defendants, is not difficult to produce, and is required to be produced pursuant to Rule 26(a), Fed R. Civ. P. before discovery is requested and irrespective of class certification. Rule 26(a) of the Federal Rules of Civil Procedures expressly provides in pertinent part:

> **(a) Required Disclosures.**
> (1) Initial Disclosures.
> (A) In General. … a party must, without awaiting a discovery request, provide to the other parties:
> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information — along with the subjects of that information — that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

The requested information is clearly discoverable in this case and should be produced as expeditiously as possible. *See Pares v. Kendall Lakes Auto., LLC,* 2013 WL 3279803 (S.D. Fla. 2013); *Disimone v. Atlantic Services, Inc.*, 09-CV-804602 (S.D. Fla. Dec. 29, 2009 at DE 7); and *Donahay v. Palm Beach Tours & Transp., Inc.*, 2007 WL 1119206, *1 (S.D. Fla. Apr. 16, 2007).

It is the Court's responsibility to ensure that notice is provided in an "efficient and proper way" to Putative Class members. *Hoffmann-La Roche,* 493 U.S. at 170-71. Mr. Raposo requests permission to send notice by email and by U.S. Mail to each member of the Putative Class, and to require Defendants to post Notice of this action at a conspicuous place at their business locations as well as to provide a copy of the Notice and Consent to Join form in the next paycheck/pay stub provided to the security officers currently employed by Defendants to help ensure that each member of the Putative Class is timely notified of his/her rights to participating in this lawsuit. *See Peña, supra.* Mr. Raposo also requests the ability to send out a reminder letter halfway through the opt-in period (Exhibit "6") and to call/text each member of the putative class after sending notice and again after sending the reminder postcard/letter to ensure that each member of the Putative Class received each mailing. *See Caamano v. 7 Call Ctr. Inc.*, 2016 WL 4704934 (S.D. Fla. Sept. 8, 2016) (granting permission to send notices by email and a reminder notice).

### 1.     *Emailing of Notice is properly approved.*

Email is an efficient, effective, and non-intrusive means of providing legal notice of one's rights. To put the request to provide email notice in context, out that email notice was determined to be an efficient and effective means for the Florida Department of Corporations to notify all Florida corporations of the requirements to timely file an annual report. (https://efile.sunbiz.org/ubrintro.html.) Email is also now the preferred method for Courts in this State to communicate with litigants. Not surprisingly, Courts within this District routinely determine that notice of a pending FLSA collective action is properly sent by email:

> Plaintiffs are correct in noting that courts in this Circuit commonly approve email notice to potential opt-in class members in FLSA cases. *See Cooper v. E. Coast Assemblers, Inc.*, 2013 WL 308880, at *4 (S.D. Fla. Jan.25, 2013); *Stuven v. Texas deBrazil (Tampa) Corp.*, 20 Wage & Hour Cas.2d (BNA) 1110, at *6 (M.D. Fla. 2013) (declining to impose a presumption that regular mail is the preferred method of notice, and finding that email is not too intrusive); *Pittman v. Comfort Sys. USA (Se.), Inc.*, 2013 WL 525006, at *2 (M.D. Fla. Feb.13, 2013) ("conclud[ing] that communication through email, in addition to regular mail, is fair and proper notice"). The Court agrees that email is an efficient and nonintrusive method of communication.

*Alequin v. Darden Restaurants, Inc.*, 2013 WL 3945919 (S.D. Fla. July 31, 2013); *see also Cooper v. E. Coast Assemblers, Inc.*, 2013 WL 308880 (S.D. Fla. 2013) (the Court concludes that Plaintiff's counsel may email the Notice in addition to its mailing). Other courts also have determined email to be an effective and efficient means of providing notice of an FLSA action. *See Palma v. Metropcs Wireless, Inc.*, 2014 WL 235478 (M.D. Fla. 2014) ("A number of courts have determined that email is an inexpensive and appropriate means of delivering notice of an action to a class.") (citations omitted); *Hubbard v. Jerry's Seamless Guttering, Inc.*, 2020 WL 6038110, at *3 (S.D. Fla. Oct. 6, 2020).

### 2.     *Mailing of Notice is proper.*

Mailing is an effective and efficient means of providing notice of a pending FLSA collective action, even when other means of notice are being provided. *See e.g.*, *Alequin*, 2013 WL 3945919 at *2; and *Cooper*, 2013 WL 308880 ("Plaintiff's counsel may email the Notice in addition to its mailing").

### 3.     *A Reminder Notice is proper.*

Besides sending notice of this action by email and U.S. Mail, Mr. Raposo requests permission to send a reminder notice to members of the putative class by email and U.S. Mail at the half-way point in the Notice Period in Exhibit "6". Mr. Raposo's request is not out of the ordinary, as Courts consistently permit such a reminder notice to ensure that putative class members are aware of their rights and the time within which to exercise them. *See Caamano v. 7 Call Ctr. Inc.*, 2016 WL 4704934 (approving reminder half-way through notice period) *Martinez*, 2016 WL 455394, at \*9; *Hubbard*, 2020 WL 6038110, at \*3.

Considering the FLSA's remedial purposes and the many cases explicitly permitting FLSA plaintiffs to send a reminder notice, Mr. Raposo submits that the Court should permit him to send the Putative Class reminder notices to ensure that each member is are aware of his/her rights and the applicable deadlines within which to exercise them.

**4.** ***Text Notification and Reminder telephone calls are proper.***

The majority of the Putative Class and the majority of those who are likely to join in these proceedings are most likely those who no longer work for Defendants. This translates into many of Defendants' current and former security officers moving their residence through the years. "In these circumstances, notice by e-mail and text message may be the best means of reaching the collective members." *Campo v. Granite Services Int'l, Inc.*, 2022 WL 212205, at \*9 (N.D. Ga. Jan. 24, 2022). With the prevalence of cellular telephones, and the reliance on cellular telephones as the primary telephone numbers (even foregoing traditional land lines at home), people are more likely to be tracked down by their cellular phones than through the mail. *Deatrick v. Securitas Sec. Services USA, Inc.*, 2014 WL 5358723, at \*5 (N.D. Cal. 2014) ("The Court is persuaded that notice by mail, including the issuance of reminder postcards and telephone numbers to facilitate tracing potential class members if mailings are returned as undeliverable, is the most appropriate method to effectuate notice in this case.") While not necessarily prevalent in this District, Courts have for years recognized that text messaging is an effective means of contacting employees about their rights.

> But privacy and data manipulation concerns do not prevent Defendants from communicating with their employees via text message regarding administrative matters; indeed, the evidence before the Court suggests that text messaging is Defendants' preferred method of employee communication. (Deck of Shawn Clark,

> dated Sept. 5, 2014, Doc. No. 23, Ex. 2; Mem. Certify 9.) Here, given the high turnover
> characteristic of the restaurant industry, the Court finds that notice via text message is
> likely to be a viable and efficient means of communicating with many prospective
> members of this collective action. *See Chamorro v. Bahman Ghermezian,* No. 12–cv–8159
> (TPG), ECF No. 17 ¶ 5 (S.D.N.Y. Feb. 25, 2013) (authorizing dissemination of FLSA
> § 216(b) notice via text message); *see also McKinzie v. Westlake Hardware, Inc.,* No. 09–
> cv–796 (FJG), 2010 WL 2426310, at *5 (W.D.Mo. Jun. 11, 2010) (ordering defendant
> to provide cellular phone numbers following conditional certification). Accordingly,
> the Court finds that Plaintiffs may provide notice to potential opt-in Plaintiffs via a
> text message.

*Bhumithanarn v. 22 Noodle Mkt. Corp.*, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015). Mr.
Raposo requests that the Court permit him to call and/or to text each member of the Putative
Class to simply inquire whether each received the Notice packet. This can be done through a
simple script, such as "This is attorney Brian Pollock from the FairLaw Firm. I wanted to
make sure that you received the Notice packet that informed you of your rights about a
pending collective action lawsuit against ARC One Protective Services, LLC, Chance F.
Ramos, and Austin Wallace. If you did not receive this Notice packet, then please contact my
office at 305.230.4884 or at brian@fairlawattorney.com to obtain a copy of this packet."

     **5.**     *Defendants' posting and provision of Notice is proper.*

     Mr. Raposo requests that the Court require Defendants to post the Notice (Exhibit
"4") in English and in Spanish at a conspicuous location frequented by their employed
security officers (and their employees with similarly-titled positions) as well as to require
Defendants to include a copy of the Notice (Exhibit "4") and Consent to Join Form (Exhibit
"5") in English and in Spanish in the next paycheck / pay stub issued to each of their
employees who has at any time since April 18, 2018 worked as a security officer, and to then
provide Mr. Raposo with a Declaration attesting to the completion of this task. Requiring
Defendants to post notice within their business locations and to include a copy of the Notice
and Consent to Join with paychecks / pay stubs will provide those security officers who have
not updated their addresses with Defendants notice of their rights. *Caamano*, 2016 WL
4704934, at *4 ("The Court also finds that posting a Notice in a break room or common
employee area is appropriate.") (citing *Martinez v. DHL Express (USA) Inc*, 2016 WL 455394,
at *9 (S.D. Fla. Feb. 5, 2016) ("The Court finds the means of transmitting the Proposed Notice

appropriate.") (collecting cases).

# VII.  CONCLUSION

Mr. Raposo respectfully requests that the Court grant conditional certification of a collective action comprised of all security officers (and similarly titled positions) who worked for Defendants from April 18, 2019 to the present in South Florida and who did not receive overtime wages for overtime worked and to award the following additional relief:

a.  To appoint Mr. Raposo as the Representative of the Class with authority to negotiate and appear at settlement conferences / mediations for the Class;

b.  To appoint Brian H. Pollock, Esq. of the FairLaw Firm as counsel for the Class;

c.  To require that within 10 days hereof, Defendants provide Mr. Raposo's counsel with a list in Excel format that includes the full names, phone numbers, last known addresses, and email addresses for members of the Putative Class who worked for Defendants from April 18, 2019 to the present, in alphabetical order, so that each can be notified of the pendency of this action and his/her rights;

d.  To permit Mr. Raposo to send notice by email and by U.S. Mail to each member of the Putative Class in the form appended hereto as Exhibit "4", with a proposed opt-in / Consent to Join form as Exhibit "5";

e.  To require the Defendants to post the Notice appended hereto as Exhibit "4" in a conspicuous place in Defendants' offices in either an employee break room, next to the Minimum Wage Notice posters located in Defendants' places of business, or other conspicuous location routinely visited by Defendants' commissioned sales employees at Defendants' places of business (and Declare doing this);

f.  To require Defendants to include a copy of the Notice and the proposed opt-in / Consent to Join form in the next paycheck/paystub provided to all current security officers (and provide Mr. Raposo with a Declaration attesting to completion);

g.  To permit Mr. Raposo to send out a letter reminding members of the Putative Class of their right to join in this lawsuit and the deadline for same (Exhibit "6");

h.  To text/call each member of the Putative Class to ensure that each received the Notice and then the reminder; and

i.  To award such other and further relief as the Court deems just and proper.

Dated this 24th day of May 2022.

Brian H. Pollock, Esq.
Brian H. Pollock, Esq.
Fla. Bar No. 174742
brian@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, FL 33146
Tel:    305.230.4884
*Counsel for Plaintiff(s)*